**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA**

(1) JARED MCLEMORE,

Plaintiffs,

vs.

(1) CHRIS MORRIS, in his official capacity Pittsburg County Sheriff,
(2) MICHAEL WILLIAMSON,
(3) DALTON BARONE,

Defendants.

CASE NO.: CIV-24-495-SPS

Attorney Lien Claimed

Jury Trial Demanded

## COMPLAINT

**COME NOW**, the Plaintiff, Jared McLemore, and for his Complaint against the above-named Defendants, states and alleges as follows:

## PARTIES

1. Plaintiff Jared McLemore ("Mr. McLemore" or "Plaintiff") is an individual and a citizen of the State of Oklahoma.

2. Defendant Chris Morris ("Sheriff Morris" or "Defendant Morris") is the Sheriff of Pittsburg County, Oklahoma, residing in Pittsburg County, Oklahoma and acting under color of state law. Sheriff Morris is sued purely in his official capacity. It is well-established, as a matter of Tenth Circuit authority, that a § 1983 claim against a county sheriff in his official capacity "is the same as bringing a suit against the county." *Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009). *See also Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010); *Bame v. Iron Cnty.*, 566 F. App'x 731, 737 (10th Cir. 2014). Thus, in suing Sheriff Morris in his official capacity, Plaintiff has brought suit against the County/Pittsburg County Sheriff's Office ("PCSO"). The Pittsburg County Sheriff is ultimately responsible for ensuring the safety and well-being of persons detained and housed at the Pittsburg County Jail ("Jail"). In addition, the Pittsburg County Sheriff is responsible for

creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of PCSO and the Jail, including the policies, practices, procedures, and/or customs closely related to the violation of Mr. McLemore's rights as set forth in this Complaint.

3. Defendant Michael Williamson ("Officer Williamson") was, at all times relevant hereto, acting under color of state law as an employee and/or agent of Pittsburg County/PCSO. Officer Williamson was responsible, in part, for ensuring Mr. McLemore's health and well-being, and assuring that the basic needs of Mr. McLemore were met, during the time he was in the custody of PCSO. Officer Williamson is being sued in his individual capacity.

4. Defendant Dalton Barone ("Sgt. Barone") was, at all times relevant hereto, acting under color of state law as an employee and/or agent of Pittsburg County/PCSO. Sgt. Barone was responsible, in part, for ensuring Mr. McLemore's health and well-being, and assuring that the basic needs of Mr. McLemore were met, during the time he was in the custody of PCSO. Sgt. Barone is being sued in his individual capacity.

## JURISDICTION AND VENUE

5. The jurisdiction of this Court is invoked pursuant to 28 U.S.C § 1343 to secure protection of and to redress deprivations of rights secured by the Fourteenth Amendment to the United States Constitution as enforced by 42 U.S.C. § 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under the color of law.

6. This Court also has original jurisdiction under 28 U.S.C. § 1331 to resolve a controversy arising under the Constitution and laws of the United States, particularly the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

7. The acts complained of herein occurred in Pittsburg County, Oklahoma. Jurisdiction and venue are thus proper under 28 U.S.C. §§ 116(a) and 1391(b).

## FACTUAL BACKGROUND

8. Paragraphs 1-7 are incorporated herein.

- **The Arrest and Detention of Mr. McLemore**

9. Mr. McLemore was pulled over, in Pittsburg County, for a lane change violation at around 1:15am on December 25, 2022.[1] After being pulled over, and submitting to breathalyzer test, Mr. McLemore registered a .081 Blood Alcohol Content ("BAC"). Despite it being Christmas, and despite having a BAC barely over the legal limit, Mr. McLemore was arrested for misdemeanor DUI.

10. Mr. McLemore was transported to the Jail.

11. At all pertinent time periods, Mr. McLemore was a pretrial detainee. Thus, the Fourteenth Amendment, rather than the Eighth Amendment, applies to his claims.

12. Mr. McLemore was very familiar with the Jail and the Pittsburg County Sheriff's Office ("PCSO"). He had done contract work as a third-party information technology ("IT") specialist at the Jail for the better part of a decade. Also, prior to his death earlier in 2022, Mr. McLemore's father was employed by PCSO as a deputy and had worked at the Jail.

13. During the booking process, Mr. McLemore was calm and respectful, despite being understandably upset about the situation.

14. At various times during the booking process, Mr. McLemore tried to explain to the staff, including Officer Williamson and Sgt. Barone, his connections to the Jail and PCSO. At one point, Mr. McLemore asked, "Do you know who I am?". Officer Williamson and Sgt. Barone were, for whatever reason, angered by this. They decided to punish and humiliate Mr. McLemore.

---

[1] As December 25 (Christmas) is Holiday, the last day for Plaintiff to file his Complaint is December 26, 2024. *See* Fed. R. Civ. Pro. 6(a)(1)(C).

15. Officer Williamson and Sgt. Barone escorted Mr. McLemore to an observation cell to serve out his punishment.

16. While in the observation cell, Officer Williamson and Sgt. Barone forced Mr. McLemore to strip naked. The command that McLemore strip naked was not for the purpose of a search, or for any other security purpose, but solely for the purpose of punishing, harassing and humiliating Mr. McLemore.

17. Nevertheless, Mr. McLemore complied with the command, stripped off all of his clothing, and was completely naked in the observation cell.

18. During the process of taking off his clothes, Officer Williamson, without warning or justification, shoved Mr. McLemore on the back of his left shoulder, and he fell onto the concrete cell floor. McLemore fell on his wrist, causing him substantial pain.

19. After Mr. McLemore was completely naked, Officer Williamson and Sgt. Barone left him in the observation cell. The temperature in the cell was approximately 50 degrees. With no clothes or blanket, Mr. McLemore quickly became shivering cold.

20. Officer Williamson and Sgt. Barone left Mr. McLemore in this condition for ***eight (8) hours.*** During those 8 hours, Mr. McLemore repeatedly complained to Officer Williamson and Sgt. Barone (and other Jail staff) that he was freezing cold and continually requested clothing and/or a blanket. In response, Officer Williamson and Sgt. Barone (and other Jail staff) mocked Mr. McLemore and refused his requests.

21. Mr. McLemore was so cold that he was shaking and shivering for hours, naked and alone in a Jail cell.

22. This is how Mr. McLemore spent his Christmas in 2022.

23. The mistreatment of Mr. McLemore was not rationally related to a legitimate governmental objective or was excessive in relation to any such purpose.

24. As a direct and proximate result of Officer Williamson and Sgt. Barone's conduct, Mr. McLemore suffered physical injuries, mental and physical pain and suffering and other damages and losses as described herein.

- **PCSO Policies and Customs**

25. The Sheriff/PCSO has certain written policies that are unconstitutional on their face.

26. Specifically, under PCSO written policy, jailers are given unfettered authority and discretion to punish pretrial detainees for any conduct the jailers deem to be insubordinate or disrespectful.

27. These policies do not define the insubordinate or disrespectful conduct that may trigger punishment, nor do the policies place any limitations on the punishment that may be imposed.

28. It is well-established that "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

29. And any "disability" imposed on a pretrial detainee must "incident of some other legitimate governmental purpose." *Id.*

30. By giving Jail staff *carte blanche* to punish pretrial detainees, the written policies of the Sheriff/PCSO violate the Fourteenth Amendment.

31. In punishing Mr. McLemore, Officer Williamson and Sgt. Barone were implementing these unconstitutional written policies.

32. Thus, there is a direct causal link between the Sheriff's/PCSO's unconstitutional written policies and the violation of Mr. McLemore's Fourteenth Amendment rights.

33. In addition, the Sheriff/PCSO has utterly failed to train and supervise its jailers with respect to the constitutional treatment of pretrial detainees.

34. The Sheriff/PCSO knew, must have known or should have known that, due to the obviously and facially inadequate training and supervision, violations of detainees' constitutional rights was probable, but failed to take reasonable measure to alleviate the risk of harm.

35. On information and belief, there is a pattern and practice, amounting to a custom, of Jail staff punishing other pretrial detainees in violation of their Fourteenth Amendment, consistent with PCSO written policies and training.

36. As a direct and proximate result of these policies and customs, Mr. McLemore suffered physical injuries, mental and physical pain and suffering and other damages and losses as described herein.

## **<u>CAUSES OF ACTION</u>**

### **VIOLATION OF THE FOURTEENTH AND FIRST AMENDMENTS (42 U.S.C. § 1983)**

- **Individual Liability and Underlying Violations**

37. Paragraphs 1-36 are incorporated herein by reference.

38. "[A] detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Thus, in analyzing a condition of pretrial confinement, "[a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* at 538. "Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it." *Id.* "[I]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of

the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id*. at 539.

39. Here, Officer Williamson and Sgt. Barone's treatment of Mr. McLemore, as described above, was meted out with the expressed intent to punish.

40. As such, Officer Williamson and Sgt. Barone's treatment of Mr. McLemore violated his Fourteenth Amendment rights.

41. Even assuming that the Officer Williamson and Sgt. Barone had no express intent to punish Mr. McLemore, their treatment of him was not reasonably related to a legitimate goal. Thus, this Court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees.

42. At the time of the complained of events, Plaintiff, as pretrial detainee, had a clearly established constitutional right under the Fourteenth Amendment to be secure in their person and free from objectively unreasonable and excessive force.

43. Any reasonable officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

44. The force used by Officer Williamson was excessive and not rationally related to any legitimate governmental or penological purpose.

45. In the totality of the circumstances, at the time that the force as used by Officer Williamson, Plaintiff was: 1) unarmed; 2) posing no security problem; 3) not actively resisting; 4) naked; 5) defenseless; and 6) posing no threat to anyone.

46. The "First Amendment protects a significant amount of verbal criticism and challenge directed" at law enforcement. *City of Houston v. Hill*, 482 U.S. 451, 461 (1987).

47. Officer Williamson and Sgt. Barone's mistreatment of Mr. McLemore was in in retaliation for his verbal complaints about their conduct towards him.

48. In retaliating against Mr. McLemore for criticizing their actions, Officer Williamson and Sgt. Barone violated Mr. Phelps's clearly established First Amendment rights.

49. As a direct and proximate result of Officer Williamson and Sgt. Barone's conduct described herein, Mr. McLemore suffered physical injuries, mental and physical pain and suffering and other damages and losses as described herein.

- **Official Capacity / Municipal Liability**

50. Paragraphs 1-49 are incorporated herein by reference.

51. The Sheriff/PCSO has certain written policies that are unconstitutional on their face.

52. Specifically, under PCSO written policy, jailers are given unfettered authority and discretion to punish pretrial detainees for any conduct the jailers deem to be insubordinate or disrespectful.

53. These policies do not define the insubordinate or disrespectful conduct that may trigger punishment, nor do the policies place any limitations on the punishment that may be imposed.

54. It is well-established that "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

55. And any "disability" imposed on a pretrial detainee must "incident of some other legitimate governmental purpose." *Id.*

56. By giving Jail staff *carte blanche* to punish pretrial detainees, the written policies of the Sheriff/PCSO violate the Fourteenth Amendment.

57. In punishing Mr. McLemore, Officer Williamson and Sgt. Barone were implementing these unconstitutional written policies.

58. Thus, there is a direct causal link between the Sheriff's/PCSO's unconstitutional written policies and the violation of Mr. McLemore's Fourteenth Amendment rights.

59. In addition, the Sheriff/PCSO has utterly failed to train and supervise its jailers with respect to the constitutional treatment of pretrial detainees.

60. The Sheriff/PCSO knew, must have known or should have known that, due to the obviously and facially inadequate training and supervision, violations of detainees' constitutional rights was probable, but failed to take reasonable measure to alleviate the risk of harm.

61. On information and belief, there is a pattern and practice, amounting to a custom, of Jail staff punishing other pretrial detainees in violation of their Fourteenth Amendment, consistent with PCSO written policies and training.

62. As a direct and proximate result of these policies and customs, Mr. McLemore suffered physical injuries, mental and physical pain and suffering and other damages and losses as described herein.

**PRAYER FOR RELIEF**

WHEREFORE, based on the foregoing, Plaintiff prays this Court grant him the relief sought, including but not limited to actual and compensatory in excess of Seventy-Five Thousand Dollars ($75,000.00), with interest accruing from the date of filing suit, punitive damages for Office Williamson and Sgt. Barone's reckless disregard of his federally protected rights, with interest accruing from the date of filing suit, the costs of bringing this action, a reasonable attorneys' fee, along with such other relief as is deemed just and equitable.

Respectfully submitted,

/s/Daniel E. Smolen
Daniel E. Smolen, OBA #19943
Robert M. Blakemore, OBA #18656

Bryon D. Helm, OBA #33003
SMOLEN & ROYTMAN
701Cincinnati Ave.
Tulsa, Oklahoma 74119
P: (918) 585-2667
F: (918) 585-2669

***Attorneys for Plaintiffs***