IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

JARED MCLEMORE,

    **Plaintiff,**

          **v.**

SHERIFF OF PITTSBURG COUNTY,
in his official capacity;
MICHAEL WILLIAMSON, and DALTON
BARONE,

    **Defendants.**

**Civil No.** 24-495 (FAB)

**OPINION AND ORDER**

BESOSA, Senior District Judge.[1]

Before the Court are three Reports and Recommendations ("R&Rs") issued by U.S. Magistrate Judge D. Edward Snow (Docket No. 48; Docket No. 49; Docket No. 50) regarding defendants' motions to dismiss (Docket No. 26, Dalton Barone; Docket No. 27, Michael Williamson; Docket No. 28, Sheriff of Pittsburg County.)  This case is before the Court by designation pursuant to 28 U.S.C. § 292(d).  See Docket No. 56.

For the reasons set forth below, the Court **REJECTS** the reasoning in the R&Rs addressing Dalton Barone ("Barone")'s and Michael Williamson ("Williamson")'s motions to dismiss.  Defendant Barone's and defendant Williamson's motions to dismiss are **DENIED**

---

[1] Senior United States District Judge for the District of Puerto Rico, sitting by designation.

Civil No. 24-495 (FAB)                                                    2

**IN PART**.  (Docket No. 26; Docket No. 27.)  The Court also **REJECTS** the reasoning in the Sheriff of Pittsburg County ("Sheriff")'s R&R.  Defendant Sheriff's motion to dismiss, however, is **GRANTED**. (Docket No. 28.)

## I.    Background

Plaintiff Jared McLemore brought this suit against (1) Michael Williamson, an officer at the Pittsburg County Sheriff's Office in his individual capacity, (2) Dalton Barone, a sergeant in the Pittsburg County Sheriff's Office in his individual capacity, and (3) the Sheriff of Pittsburg County, in his official capacity.  (Docket No. 22.)

Around 1:15 a.m. on December 25, 2022, McLemore was pulled over for a lane change violation.  Id.  He submitted to a breathalyzer test and registered a 0.081 Blood Alcohol Content, which is over the legal limit.  Id.  He was transported to the Pittsburg County Jail for misdemeanor driving under the influence ("DUI").  Id.  McLemore alleges that he was familiar with the jail and the Pittsburg County Sheriff's Office because he had done some IT work for it in the past, and his father had been a deputy at the Sheriff's Office as well.  Id.

When he was being booked, McLemore claims that he was calm and respectful.  Id.  He did, however, try to explain his connections to Williamson and Barone, and asked them if they knew

Civil No. 24-495 (FAB)                                                    3

who he was.  Id.  McLemore alleges that this question angered Williamson and Barone, and that they decided to humiliate him in retaliation.  Id. at pp. 3-4.  He alleges that to humiliate him, Williamson and Barone took him to an observation cell where the temperature was 50 degrees Fahrenheit, ordered him to strip naked and left him there for eight hours without his clothes or a blanket.  Id. at p. 4.  He repeatedly complained to Williamson and Barone that he was freezing cold and requested clothes or a blanket but he was mocked and his requests were refused.  Id. Additionally, McLemore alleges that while he was taking off his clothes in the observation cell, Williamson shoved him on the back of his shoulder causing him to fall on his wrist, causing him substantial pain.  Id.  He alleges that Williamson's and Barone's conduct caused him to suffer "physical injuries, mental and physical pain and suffering."  Id. at p. 5.  He raises Fourteenth Amendment and Fourth Amendment claims against Barone and Williamson.

McLemore also raises claims against the Sheriff.  He alleges that the Sheriff has written policies that are unconstitutional on their face because they give officers "unfettered authority and discretion to inflict 'disciplinary action' on pretrial detainees for any conduct [the officers] deem to be insubordinate or disrespectful."  Id.  Specifically, McLemore alleges that "Jail

Civil No. 24-495 (FAB)                                                          4

Rules 15 and 16 require 'disciplinary action' any time a pretrial detainee does not follow an order or is disrespectful to staff." Id. at p. 6. He alleges that the Sheriff "has utterly failed to train and supervise [the] jailers with respect to the constitutional treatment of pretrial detainees." Id. He alleges that there is a causal link between the unconstitutional Jail Rules and the violation of his Fourteenth Amendment rights. Id.

On March 11, 2025, all three defendants moved to dismiss the claims against them. (Docket No. 26; Docket No. 27; Docket No. 28.) McLemore opposed (Docket No. 35; Docket No. 36; Docket No. 37), and defendants replied. (Docket No. 40; Docket No. 41; Docket No. 42.) The motions were referred to Magistrate Judge D. Edward Snow. (Docket No. 43.) On March 5, 2026, Magistrate Judge Snow issued two R&Rs, one for Barone's motion to dismiss (Docket No. 48), and another for Williamson's. (Docket No. 49.) On March 18, 2026, Magistrate Judge Snow issued a third R&R for the Sheriff's motion to dismiss. (Docket No. 50.) The R&Rs recommended that McLemore's claims should all be dismissed. Id. McLemore objected and defendants opposed the objections. (Docket No. 53; Docket No. 54; Docket No. 55; Docket No. 58; Docket No. 59; Docket No. 60.)

McLemore makes the same objections to Barone's and Williamson's R&R. He asserts that the magistrate judge erred by

Civil No. 24-495 (FAB)                                                      5

misapplying the Rule 12(b)(6) standard, and that he misapplied civil rights law. (Docket No. 53 at p. 3; Docket No. 54.) He argues that he "sufficiently alleged that his treatment . . . was not rationally related to a legitimate governmental objective or excessive in relation to that purpose." (Id. at p. 5; Docket No. 54.) McLemore also argues that the magistrate judge erred because he failed to address the crux of his complaint – that he was stripped and left naked in a cold cell for eight hours. Id.

McLemore also objects to the magistrate judge's finding in the Sheriff's motion to dismiss. (Docket No. 55.) He argues that the magistrate judge erred in finding that there was no underlying constitutional violation supporting the Sheriff's liability pursuant to Monell v. New York City Dept. of Social Servs., 436 U.S. 658 (1977), and that the magistrate judge also erred by relying on materials outside the Amended Complaint and by weighing competing evidence. Id. at pp. 3, 8. Essentially, McLemore argues that the magistrate judge treated the motion as one for summary judgment without converting it into one, and then failed to view the evidence in the light most favorable to the non-moving party, himself. Id.

## II. Legal Standard

A district court may refer a pending motion to a magistrate judge for a report and recommendation. See 28 U.S.C.

Civil No. 24-495 (FAB)                                                        6

§ 636(b)(1)(B); Fed. R. Civ. P. 72(a).   Any party adversely affected by the report and recommendation may file written objections within fourteen days of being served with the magistrate judge's report.   28 U.S.C. § 636(b)(1).   "A party that files a timely objection is entitled to a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which a specific objection is made."   Lowery Wilkinson Lowery, LLC v. Illinois, No. 25-CV-22-RAW, 2025 U.S. Dist. LEXIS 268063, at *3 (E.D. Okla. Dec. 31, 2025) (citing United States v. Raddatz, 446 U.S. 667, 673 (1980)).   "The objections must specifically identify those findings or recommendations to which objections are being made" and "[t]he district court need not consider frivolous, conclusive, or general objections."   Id. (citing Battle v. U.S. Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987)).   In conducting its review, a court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."   28 U.S.C. § 636(a)(b)(1).

Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a defendant may move to dismiss an action for failure to state a claim upon which relief can be granted.   See Fed. R. Civ. P. 12(b)(6).   To survive a Rule 12(b)(6) motion, a complaint must contain enough factual matter "to state a claim to relief

Civil No. 24-495 (FAB)                                                    7

that is plausible on its face." Bell Atl. Corp. v. Twombly, 550

U.S. 544, 570 (2007).  A court must decide whether the complaint

alleges facts which "raise a right to relief above the speculative

level."  Id. at 555.  "At the motion-to-dismiss stage, [a court]

must accept as true all well-pleaded factual allegations in a

complaint and view these allegations in the light most favorable

to the plaintiff."  Cressman v. Thompson, 719 F.3d 1139, 1141 (10th

Cir. 2013) (internal quotation marks and alterations omitted).

## III. Discussion

The Court will first discuss McLemore's objections to the

R&Rs issued for Barone's and Williamson's motions to dismiss.

After discussing the alleged errors there, the Court will analyze

McLemore's objections to the R&R for the Sheriff's motion to

dismiss.

### A.   Barone's and Williamson's Motions to Dismiss

McLemore asserts that the magistrate judge erred in

misapplying the Rule 12(b)(6) standard and that he misapplied civil

rights law.  (Docket No. 53 at p. 3; Docket No. 54.)  He argues

that he "sufficiently alleged that his treatment . . . was not

rationally related to a legitimate governmental objective or was

excessive in relation to that purpose."  Id. at p. 5; Docket

No. 54.  McLemore also argues that the magistrate judge erred

because he failed to address the crux of the complaint – that he

Civil No. 24-495 (FAB)                                            8

was stripped and left naked in a cold cell for eight hours.  <u>Id.</u>
The Court agrees.

### i.    Constitutional Basis for McLemore's Mistreatment Claim

The Court's first task is to resolve which constitutional provision governs this case.  In essence, McLemore raises a mistreatment claim under the Fourth and Fourteenth Amendments.  The choice of amendment matters because mistreatment while in state custody can be challenged under the Fourth, Eighth, and Fourteenth Amendments "depending on where the [individual] finds himself in the criminal justice system – and each carries with it a very different legal test." <u>Porro v. Barnes</u>, 624 F.3d 1322, 1325 (10th Cir. 2010); <u>Colbruno v. Kessler</u>, 928 F.3d 1155, 1161 (10th Cir. 2019).  It is important to note that "almost any federal constitutional claim against a state official is, strictly speaking, a claim under the Fourteenth Amendment." <u>Colbruno</u>, 928 F.3d at 1161.  When dealing with state officials, however, "it is common to say that a claim is based, say, on the First Amendment, Fourth Amendment, Sixth Amendment, or Eighth Amendment." <u>Id.</u>  On the other hand, a pure Fourteenth Amendment claim is not based on the incorporation of the Bill of Rights into the Fourteenth

Civil No. 24-495 (FAB)                                                        9

Amendment, but rather the Due Process Clause in the amendment itself.  See id.

Having cleared up how the Court will discuss the amendments, the Court turns to analyze which constitutional amendment applies here.  The Fourth Amendment prohibits "unreasonable searches and seizures."  U.S. Const. Art. IV.  It covers "any claim that arises in the context of an arrest or investigatory stop of a free citizen" and continues to apply until there is "a judicial determination as to whether there was probable cause to charge an arrestee with a crime."  Geddes v. Weber Cnty., No. 20-4083, 2022 WL 3371010, at *4 (10th Cir. Aug. 16, 2022) (internal quotations omitted).  Once there is a determination that probable cause exists, the claims are covered by "the due process clauses of the Fifth or Fourteenth Amendments and their protection against arbitrary governmental action by federal or state authorities[.]"  Colbruno, 928 F.3d at 1162.  At this stage, the government may detain a defendant to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility as long as those conditions and restrictions do not amount to punishment or otherwise violate the Constitution."  Bell v. Wolfish, 441 U.S. 520, 536-37 (1979).  After a defendant has been convicted, the Eighth Amendment applies and "protect[s] against unjustifiable conditions of confinement, such as 'the

Civil No. 24-495 (FAB)                                                    10

unnecessary and wanton infliction of pain.'" Colbruno, 928 F.3d at 1162 (quoting Hudson v. McMillian, 503 U.S. 1, 5 (1992)).

Here, McLemore was arrested for misdemeanor DUI. He was placed in an observation cell to sober up and ordered to strip naked and kept naked for eight hours in the cell. He does not allege there was a judicial determination of probable cause or that he was convicted of a crime. When a person has been arrested and has not had a judicial determination of probable cause, like McLemore, the Court turns to the Fourth Amendment to evaluate a claim of mistreatment. Accordingly, the Court assesses his claim under the Fourth Amendment.[2]

Because the magistrate judge only addressed Barone's and Williamson's motions to dismiss as conditions of confinement claim under the Fourteenth Amendment, the Court **REJECTS** the R&R's reasoning. Because the Fourteenth Amendment claim based on the due process clause itself is not the proper claim, the Court dismisses McLemore's Fourteenth Amendment claim. See Geddes, 2022 WL 3371010. This dismissal does not end our inquiry because McLemore also raises a Fourth Amendment claim, to

---

[2] Although McLemore's claim could fit under the Fourteenth Amendment, his claim is better analyzed through the Fourth Amendment because he was arrested. See Graham v. Connor, 490 U.S. 386, 395 (1989) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this, or of physically intrusive governmental conduct, that Amendment, not the more generalized notation of 'substantive due process,' must be the guide for analyzing these claims.").

Civil No. 24-495 (FAB)                                                11

which both Williamson and Barone argued for dismissal.  See Docket No. 26; Docket No. 27.

### ii.  Mistreatment under the Fourth Amendment

#### 1.  Stripped Naked

Typically, when a mistreatment claim is raised in the Fourth Amendment context, it is for use of excessive force, "but the interests protected by the Fourth Amendment are not confined to the right to be secure against physical harm; they include liberty, property and privacy interests – a person's sense of security and individual dignity."  Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1195 (10th Cir. 2001); see also Colbruno, 928 F.3d at 1161-62.  Accordingly, "the Fourth Amendment requires an examination of the reasonableness of the manner in which a search or seizure is conducted."  Id. at 1188.

"To determine the constitutionality of a seizure 'we must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'"  Id. (citing United States v. Place, 462 U.S. 696, 703 (1983)).  The reasonableness of the seizure depends on when a seizure is made and how it is carried out.  Id.  A court looks at whether the totality of the circumstances justified the seizure, without regard to an officer's underlying intent or motivation.

Civil No. 24-495 (FAB)                                                          12

Id.; Phillips v. Sheridan Cnty. Sheriff's Off., Case No. 12-cv-153-ABJ, 2015 WL 13689047, at *6 (D. Wyo. May 4, 2015). "[R]elevant factors include the crime's severity, the potential threat posed by the suspect to the officer's and others' safety, and the suspect's attempts to resist or evade arrest." Id.

Here, McLemore was arrested for driving under the influence and transported to jail. (Docket No. 22 at p. 3.) He alleges that he was calm and respectful during the booking process. Id. He was placed in an observation cell, and once inside Williamson and Barone forced him to strip naked. Id. at 4. McLemore complied and was completely naked in the observation cell with temperatures of approximately 50 degrees with no clothes or blankets. Id. He was left naked in the observation cell for eight hours. And no matter how much he complained and requested either his clothes or a blanket, his requests apparently went unanswered.

Williamson and Barone argue that McLemore fails to state a claim for which relief could be granted because there was no physical contact, and because he fails to allege facts that show that the search was performed to humiliate him rather than for a legitimate purpose. (Docket no. 26 at p. 8.) These arguments miss the mark. First, the issue is how his seizure was executed, i.e., that he was stripped naked and remained so for eight hours in an observation cell with a temperature of 50 degrees

Civil No. 24-495 (FAB)                                              13

- not the seizure's purpose or that there was no physical component. See Holland, 268 F.3d at 1194.

Williamson and Barone cite behind Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington[3] to argue that the search was reasonable because a pretrial detainee can be searched when he enters a jail. Apart from the fact that what is being called unreasonable is the seizure – not the search - Williamson and Barone leave out an important detail. For a strip search to be considered reasonable, a determination must have been made that the defendant will be held in the general population cell. See Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs, 962 F.3d 1204, 1235-39 (10th Cir. 2020). A jailer cannot simply strip search anyone who enters a jail as a routine practice. That would render Florence hollow. See Hinkle, 962 F.3d at 1237-38.

Williamson and Barone also argue that McLemore fails to allege any words, actions or circumstances that suggest that their actions were motivated by McLemore's "Do you know who I am?" comment. But this argument is not necessary. The analysis under the Fourth Amendment only requires the Court to ask if under a totality of the circumstances, the officer's actions were reasonable. Here, McLemore was arrested for driving under the

---

[3] 566 U.S. 318 (2012)

Civil No. 24-495 (FAB)                                                    14

influence and taken to jail.  Once there, he was apparently calm and respectful while attempting to explain his connections to the jail.  Subsequently, Williamson and Barone placed McLemore in an observation cell and ordered him to strip naked and kept him in the cell naked without a blanket or clothes for eight hours.  This action is not reasonable.  He was alone in the observation cell and not a threat to the officers or to others.  Accordingly, the Court finds that McLemore has sufficiently pled facts for his claim that his Fourth Amendment rights were violated.

Finally, Williamson and Barone argue that McLemore fails to allege that they had personal participation in the constitutional violation.  (Docket No. 26 at p. 4; Docket No. 27 at p. 11.)  They argue that they do not control the temperature of the jail or the cell.  Id.  This argument again misconstrues the alleged constitutional violation.  It is not only that the temperature in the observation cell was cold, but that both defendants also ordered McLemore to strip naked and kept him naked for eight hours in the cold.  Accordingly, McLemore's allegations state that both Williamson and Bartone personally participated in the alleged constitutional violations.

### 2.    Shoving to the Floor

McLemore also alleges that Williamson shoved him on the shoulder while he was naked and that he fell to the

Civil No. 24-495 (FAB)                                         15

cold floor, injuring his wrist.  Substantively, this conduct alleges excessive force under the Fourth Amendment.  "A police officer violates an arrestee's . . . Fourth Amendment right to be free from excessive force during an arrest if the officer's actions were not 'objectively reasonable' in light of the facts and circumstances confronting him."  Estate of Ceballos v. Husk, 919 F.3d 1204, 1213 (10th Cir. 2019).  In assessing the reasonableness of the use of force, a court looks to factors similar to those used to assess the reasonableness of a seizure:  "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate that to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight."  McCoy v. Meyers, 887 F.3d 1034, 1045 (10th Cir. 2018). "While not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment, pushes and shoves, like other police conduct, must be judged under the Fourth Amendment standard of reasonableness." Holland, 268 F.3d at 1194.

Here, McLemore was arrested for misdemeanor driving under the influence.  He was arrested and taken to jail, where he was calm and respectful during the booking process. (Docket No. 22 at p. 3.)  McLemore was already in an observation cell when he was ordered to strip; there was no safety concern to

Civil No. 24-495 (FAB)                                              16

the officers or to the general population because "holding a DUI arrestee in a holding cell ("dry cell") for eight hours [is] commonly done to allow time for the detainee to sober up and prevent harm to the detainee or others prior to introduction into the general population." (Docket No. 41 at p. 7.) According to defendants' own argument, McLemore was separated from the general population and did not pose a threat. Additionally, Williamson also does not allege McLemore was resisting arrest or attempting to evade arrest. Therefore, McLemore has alleged sufficient facts for his Fourth Amendment excessive force claim.

### iii. Qualified Immunity

Having established that McLemore has sufficiently pled Fourth Amendment violations, the Court turns to whether defendants are nonetheless entitled to qualified immunity. "Qualified immunity insulates officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Hinkle, 962 F.3d at 1218 (internal quotation marks omitted). "Ordinarily[,] [when] there is no precedent of the Supreme Court or [the Tenth Circuit of Court of Appeals] declaring that there would be a violation under closely similar facts[,]" a court could find that there is no clearly established law. Colbruno, 928 F.3d at 1165. "[A] constitutional violation[,

Civil No. 24-495 (FAB)                                                    17

however,] may be so obvious that similar conduct seldom arises in our cases, and it would be remarkable if the most obviously unconstitutional conduct should be the most immune from liability only because it is so flagrantly unlawful that few dare its attempt."  Id. (internal quotation marks omitted).  Here, Fourth Amendment rights to unreasonable searches and seizures are clearly established, and both Florence and Hinkle have been on the books for years.  See Pray v. Sedgwick Cnty., Case No. 12-cv-01231-TC, 2025 U.S. Dist. LEXIS 261919, at *27-28 ("The facts in Hinkle are sufficient to put any reasonable officer on notice that it is unlawful to strip search every arrestee who enters the booking area before a determination to house the arrestee in general population.")  Although Florence and Hinkle pertain to a strip search and not the manner of the execution of a seizure, as is the issue here, the Court finds that these two cases provide a ceiling as to what would be considered unreasonable in a Fourth Amendment context.  Florence and Hinkle clearly establish that ordering an individual who is not destined to be in the general population to strip naked is unreasonable.  Accordingly, the manner and duration in which Williamson and Barone seized McLemore – ordering him to strip and keeping him naked for eight hours in a cold cell – cannot be excused through qualified immunity.  Nor is it a defense that the complaint fails to allege that Barone and Williamson knew

Civil No. 24-495 (FAB)                                                    18

McLemore would not be placed in the general population.  Even if

we look at this as simply a strip search, for it to be

constitutionally acceptable, Williamson and Barone must have

already determined that McLemore would be placed in the general

population.  McLemore's allegations, interpreted in the light most

favorable to him, suggest that this may not have been the case.

Accordingly, the Court **DENIES IN PART**

Williamson's and Barone's motions to dismiss.

B.    **Sheriff of Pittsburg County's Motion to Dismiss**

The Court now turns to the Sheriff's motion to dismiss.

The magistrate judge recommended dismissing the claims against the

Sheriff because he found that McLemore was not subject to a

constitutional violation, that there was no Municipal/Monell

liability, and that McLemore failed to show that the Sheriff should

have known that the policies facially violate the Fourteenth

Amendment.  (Docket No. 50 at p. 5-6.)  McLemore objects to the

magistrate's recommendations.  Specifically, he argues that the

magistrate judge erred by relying on materials outside the Amended

Complaint and weighing competing evidence.  (Docket No. 55 at

p. 8.)  Essentially, McLemore argues that the magistrate judge

improperly treated the motion to dismiss as one for summary

judgment without converting it into one.  Id.  The Court agrees.

Civil No. 24-495 (FAB)                                                    19

When reviewing a motion to dismiss under Rule 12(b)(6), the court generally may not look beyond the four corners of the complaint.  Wally v. City and Cnty. of Denver, 932 F.3d 1277, 1286 n.1 (10th Cir. 2019).  There are, however, three exceptions to this rule:  (1) "documents that the complaint incorporates by reference," i.e., documents are attached as exhibits to the complaint; (2) "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity;" and (3) matters "which the court may take judicial notice."  Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010).  "To consider a matter outside the pleadings, the court must convert the Rule 12(b)(6) motion into one for summary judgment under Rule 56."  J.D. Heiskell Holdings, LLC v. Willard Dairy, LLC, 750 F. Supp. 3d 1289, 1293 (D.N.M. 2024).

With his motion to dismiss, the Sheriff submitted a copy of what he argues to be the jail rules that were in effect when McLemore was in jail.  The magistrate judge found, however, that the Sheriff "provided clear evidence that the Jail Rules [McLemore] relies upon are not the Jail Rules that were in effect at the time of [McLemore's] booking."  (Docket No. 50 at p. 7.)  The Court rejects this finding.  It seems that the magistrate judge determined that the rules were included as an exhibit in the

Civil No. 24-495 (FAB)                                                    20

amended complaint and determined that the exhibit contradicted the contents of the complaint.  See id. at pp. 6-7.   The application of this exception, however, is only appropriate when the exhibit has been attached to the complaint.  See Brokers' Choice of Ame., Inc. v. NBC Universal, Inc., 961 F.3d 1081, 1105 (10th Cir. 2017) ("When a complaint includes an attached exhibit[,] the exhibit's legal effect is to be determined by its terms rather than by the allegations of the pleader.")  Here, McLemore did not attach any exhibit to his complaint; the exhibit was provided by the Sheriff in his motion to dismiss.  Accordingly, it cannot be considered under this exception.

        The Court could consider the exhibit if it was central to the complaint and if the parties do not dispute the document's authenticity.  While the Jail Rules are central to the complaint, there is a dispute as to which rules were in effect when McLemore was arrested.  The magistrate judge stated that the Sheriff's Office "provided clear evidence" that the Jail Rules that McLemore relies on cannot be the ones that were in effect when he was booked.  (Docket No. 50 at p. 7.)  The Court disagrees.  Neither the Jail Rules provided by the Sheriff's Office, nor the ones provided by McLemore contain an effective date.  Accordingly, the parties dispute the authenticity of the document and as a result, the Jail Rules cannot be considered.

Civil No. 24-495 (FAB)                                            21

At this stage, the Court accepts all of McLemore's factual allegations as true and draws all inferences in his favor. McLemore alleges that the Jail Rules allowed staff to take disciplinary action if McLemore did not obey staff and disrespected staff. See Docket No. 22 at p. 6. McLemore argues that a lack of training and definition on "disciplinary action" allowed Williamson and Barone to leave him naked in an observation cell for eight hours as punishment for his disobedience and disrespect of staff. Id. Considering the allegations in the four corners of the complaint, McLemore raises enough facts to plausibly state a claim.

The problem that the Court now faces, however, is that McLemore has been adamant that his claim against the Sheriff arises from a violation of his Fourteenth Amendment rights, not the Fourth Amendment. See Docket No. 60 at p. 1 ("[H]is claim in this case are brought under the Fourteenth, not the Eighth, Amendment."); see generally Docket No 22 at pp. 10-11. He only asserts a Fourth Amendment claim in the complaint solely referring to the actions taken by Williamson and Barone. The complaint does not contain a Fourth Amendment claim against the Sheriff. See Docket No. 22 at p. 8. "[T]he burden rests on the plaintiff[ ] to provide fair notice of the grounds for the claims made against each of the

Civil No. 24-495 (FAB)                                                    22

defendants."). Robbins v. Oklahoma, 519 F.3d 1242, 1250 (10th Cir. 2008).

In Geddes v. Weber Cnty., the Tenth Circuit Court of Appeals determined that the district court properly dismissed the case because the plaintiff had failed to provide fair notice to the defendants that his claims were based on the Fourth Amendment and not the Fourteenth Amendment. Geddes, 2022 WL 3371010 at *9. The plaintiff in Geddes had been warned by the defendants that he could only pursue his claim pursuant to the Fourth Amendment and yet plaintiff continued to "persistently maintain[ ]" that his claim was pursuant to the Fourteenth Amendment. Id. at *10. Similarly here, McLemore insists, even in his objection to the R&R, that his claims against the Sheriff are brought pursuant to the Fourteenth Amendment. See Docket No. 60 at p. 1. The Court cannot say that the Sheriff had notice of a Fourth Amendment claim because the Sheriff did not make an argument as to the Fourth Amendment like Williamson and Barone did. Because the Fourteenth Amendment claim against the Sheriff is not the proper claim, the Court will grant the Sheriff's motion to dismiss without prejudice. The Court will, however, allow McLemore thirty days to amend his complaint to allege the correct constitutional claim. See Fed. R. Civ. P. 15(a)(2) (courts "should freely give leave [to amend] when justice so requires.").

Civil No. 24-495 (FAB)                                                        23

## IV.  Conclusion

For the reasons set forth above, the Court **REJECTS** the reasoning in Dalton Barone's and Michael Williamson's R&Rs. Defendant Barone's and defendant Williamson's motions to dismiss are **DENIED IN PART**.  (Docket No. 26; Docket No. 27.)  McLemore's pure substantive due process claim against Barone and Williamson pursuant to the Fourteenth Amendment is dismissed **WITH PREJUDICE**. His Fourth Amendment claim against Barone and Williamson, as incorporated through the Fourteenth Amendment, survives.

The Court also **REJECTS** the reasoning in the Sheriff of Pittsburg County's R&R.  Defendant Sheriff's motion to dismiss, however, is **GRANTED**.  (Docket No. 28.)  McLemore's pure substantive due process claim pursuant to the Fourteenth Amendment against the Sheriff is **dismissed WITH PREJUDICE**.  McLemore is allowed thirty days to amend his complaint to allege the correct constitutional claim against the Sheriff.

Partial Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, June 11, 2026.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE